

Frank W. Volk
United States Dist

Dated: November 7th, 2019

# UNITED STATES BANKRUPT
## SOUTHERN DISTRICT OF WEST VIRGINIA
### AT BLUEFIELD

| IN RE: | CASE NO. 1:18-bk-10062 |
|---|---|
| RANDY MICHAEL BRODNIK, | CHAPTER 7 |
| Debtor. | JUDGE FRANK W. VOLK |
| CORI ANN POST, | A.P. No. 1:18-ap-01005 |
| Plaintiff, | |
| v. | |
| RANDY MICHAEL BRODNIK, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Pending is Defendant Randy Michael Brodnik's ("Brodnik") Motion to Amend Discovery Responses, filed on July 23, 2019 [Dckt. 15]. Plaintiff Cori Ann Post ("Post") filed a Response and Objection to Defendant's Motion to Amend Discovery Responses on July 25, 2019 [Dckt. 17]. On October 2, 2019, Brodnik filed a Reply and, on October 8, 2019, Post filed a surreply [Dckt. 35, 36]. Brodnik seeks to amend his previously unfiled responses to Post's request for admissions outside of the deadline.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). The Court is vested with subject-matter jurisdiction pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334.

**I.**

This matter arises from the voluntary Chapter 7 petition filed by Brodnik on May 31, 2018. The parties were married from 1985 until 2008. In 2008, Post filed for divorce in the

Circuit Court of Tazewell County, Virginia. The court awarded Post $13,500 in monthly temporary spousal support and $3,802 in temporary child support. The monthly spousal support award was eventually reduced to $8,000. Brodnik was also ordered to pay for both the three minor children and Post's medical insurance premiums. Since the initial support award was issued, Post has filed three petitions – in 2014, 2016, and 2018 – "for Rule to Show Cause" related to Brodnik's failure to pay his support obligations [Dckt. 1 at 2–3]. As of May 10, 2018, Brodnik allegedly owed Post $168,000 in spousal support payments and $16,506 in health insurance premium payments [Dckt. 1 at 3]. By August 2018, the total arrearage was $227,370 [Dckt. 12-1 at 36].

On May 31, 2018, Brodnik filed petitions for Chapter 7 and Chapter 11 bankruptcy in this Court. On November 19, 2018, Post filed the instant adversary proceeding arising from the Chapter 7 proceedings. Post seeks "to determine the dischargeability of debt," "to establish the priority and amount of [her] claim against [Brodnik]" for denial of discharge, and to recover damages from Brodnik [Dckt. 1 at 1].

On January 7, 2019, this Court entered a Scheduling Order in this matter. The Order provides:

> All discovery requests shall be completed by <u>June 5, 2019</u>. 'Completed' means that all discovery, objections, motions to compel and *all other motions and replies relating to discovery* in the action must be filed and/or noticed in time for the party objecting or responding to have an opportunity under the Rules to make responses.

[Dckt. 6 at 1]. On March 28, 2019, Post served Brodnik with discovery requests, including 25 requests for admissions [Dckt. 10].

During discovery in this proceeding, the Chapter 7 and 11 bankruptcy cases were held in abeyance. Specifically, on March 7, 2019, this Court entered an order in the Chapter 11 case lifting the automatic stay to allow litigation to proceed in a state court case. On March 29,

2019, the Court did the same in the Chapter 7. The Court issued no such order in the instant proceeding.

On July 5, 2019, following the completion of discovery, Post filed a Motion for Summary Judgment [Dckt. 12]. Subsequently, on July 23, 2019, Brodnik filed the instant Motion to Amend Discovery Responses [Dckt 15]. On July 25, 2019, Post filed her Response and Objection to Defendant's Motion to Amend Discovery Responses [Dckt. 17]. On September 12, 2019, Brodnik served his amended discovery responses on Post [Dckt. 27]. As relevant here, Brodnik admitted thirteen of the requests for admissions [Dckt. 37-1 at 9–16]. Brodnik denied the remaining twelve requests, based on "lack of knowledge to admit or deny [each] request" after having made a reasonable inquiry [Dckt. 37-1 at 9–16].

On September 18, 2019, the Court held a brief hearing on the matter [Dckt. 34]. After hearing arguments by both parties, the Court ordered Brodnik to file a reply and granted Post leave to file a surreply [Dckt. 31]. On October 2, 2019, Brodnik filed his reply [Dckt. 35]. Finally, on October 8, 2019, Post filed her surreply [Dckt. 36, 37].

In support of his motion, Brodnik asserts that his failure to timely file responses to Post's requests for admissions was the result of his erroneous belief that the instant adversary proceeding was being held in abeyance. Although no such order was entered in this case, orders lifting the automatic stay were entered in the Chapter 7 and 11 bankruptcy cases. According to Brodnik, allowing amendment of the admissions "will better allow this case to proceed on its merits" and that Post "will not be prejudiced" as a result [Dckt. 15 at 3]. Further, Brodnik asserts that Post failed to confer in good faith regarding his failure to file responses. Had Post done so, Brodnik argues that he would have learned that the matter had not been stayed. Finally, Brodnik

3

contends that there has been no "unjustifiable and lengthy" delay in responding to the requests [Dckt. 35 at 5].

Post, by response and surreply, argues that Rule 16 governs Brodnik's motion, because he cannot amend what was never filed and his late filing violates the Scheduling Order. And, because "there cannot have been any reasonable belief that this case was stayed," Post asserts that Brodnik cannot meet Rule 16's good cause standard [Dckt. 17 at 3]. Specifically, Post states that the stay rulings "only appl[ied] to the appeal of the Stinetjes, Gasaway, and Gibson judgment," which has no relation to her claims against Brodnik [Dckt. 37 at 3]. Finally, Post argues that she would be prejudiced by amendment to the admissions, because her requests for admissions were tailored to narrow the issues in dispute. Additionally, Post states that she relied upon the deemed admissions in her summary judgment motion and discovery. If amendment were allowed, Post would be required to "incur additional unnecessary expense . . . [and] be required to obtain witnesses . . . to prove those fact[ual] and legal conclusions which" are currently deemed admitted [Dckt. 37 at 8].

The matter is ready for adjudication.

## II.

**A. Rule 36**

The purposes of Rule 36 requests for admission "are to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be." *Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co.*, 246 F.R.D. 522, 529 (S.D. W. Va. 2007) (internal quotation marks omitted); *see also Adventis, Inc. v. Consol. Prop. Holdings, Inc.*, 124 F. App'x 169, 172 (4th Cir. 2005) ("The purpose of such admissions is to narrow the array of issues before the court, and thus expedite both the discovery process and the

4

resolution of litigation."); *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 967 (3d Cir. 1988) ("The purpose of Rule 36(a) is to narrow the issues for trial to those which are genuinely contested.").

Once a party receives a request for admissions, "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection to the matter." Fed. R. Civ. P. 36(a)(3); *see also* Fed. R. Bankr. P. 7036 ("Rule 36 FR Civ P applies in adversary proceedings."). Under Rule 36, the failure to timely respond acts as an admission of the requested fact. *See* Fed. R. Civ. P. 36(a)(3). "A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b).

In its discretion, "the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action *and* if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed. R. Civ. P. 36(b) (emphasis added); *see also Adventis*, 124 F. App'x at 173 (emphasis added) ("Once made, an admission may be withdrawn *only* if: a) the withdrawal would promote the presentation of the merits of the action, *and* b) allowing the withdrawal would not prejudice the party that obtained the admission."). However, a party has no right to withdrawal or amendment. "Even when these two factors are established, a district court still has discretion to deny a request for leave to withdraw or amend an admission." *In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001).

### 1.  Presentation of the Merits

"The first half of the test in Rule 36(b) is satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case." *Conlon v. United States*, 474 F.3d 616, 622 (9th Cir. 2007); *see also Perez v. Miami-Dade County*, 297 F.3d 1255, 1266

5

(11th Cir. 2002) (first prong met where a core element of claim was deemed admitted and had taken "the wind out of the defendants' sails and effectively ended the litigation"). Whether the first half of this test is satisfied depends upon the particular character of the matters deemed admitted and the circumstances of each case. *See, e.g.*, *Manatt v. Union Pac. R.R. Co.*, 122 F.3d 514, 517 (8th Cir. 1997) ("In the circumstances of this case, the prospect of deeming the controverted fact as having been admitted seems to be anathema to the ascertainment of the truth."). Courts will often allow withdrawal of a deemed admission if it is clearly false. *See, e.g.*, *Bender v. Xcel Energy*, 507 F.3d 1161, 1168 (8th Cir. 2007); *F.D.I.C. v. Prusia*, 18 F.3d 637, 641 (8th Cir. 1994) ("Permitting the amendment of responses to a request for admissions is in the interests of justice if the record demonstrates that the 'admitted' facts are contrary to the actual facts."); *Farr Man & Co. v. M/V Rozita*, 903 F.2d 871, 876 (1st Cir. 1990) (first prong met where the fact deemed admitted was inconsistent with the record); *Centex Constr. v. Acstar Ins. Co.*, 448 F. Supp.2d 697, 707 (E.D. Va. 2006) (denying amendment where admissions had not, as argued, "rested on a mistaken premise" such as to prevent presentation of the merits but were "based on a correct interpretation").

### 2.  Prejudice

As to the second half of the Rule 36(b) test, prejudice "relates to the difficulty a party may face in proving its case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously deemed admitted." *Conlon*, 474 F.3d at 622 (internal quotation marks omitted). Thus, "courts should focus on the prejudice that the nonmoving party would suffer at trial." *Id.* at 623; *see also Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 244 (5th Cir. 2014) (affirming denial of withdrawal where movant failed to establish that nonmovant would not be prejudiced by request to withdraw weeks

6

before the trial date, after the close of discovery and the dispositive motion deadline, and after a motion for summary judgment had been filed); *Raiser v. Utah County*, 409 F.3d 1243, 1247 (10th Cir. 2005) (no prejudice where the nonmovant relied on the deemed admissions for only two weeks while preparing motion for summary judgment). "The prejudice contemplated by Rule 36(b), however, is not simply that the party who obtained the admission now has to convince the jury of its truth. Something more is required." *Gwynn v. City of Philadelphia*, 719 F.3d 295, 299 (3d Cir. 2013) (quoting *Bergemann v. United States*, 820 F.3d 1117, 1121 (10th Cir. 1987)); *see also Metpath, Inc. v. Modern Med.*, 934 F.2d 319 (4th Cir. 1991) (unpublished table decision) (prejudice results where requesting party faces difficulty proving case because of the "sudden need to obtain evidence required to prove the matter that had been admitted").

Nor is a party prejudiced solely by reliance on the deemed admissions in preparing a summary judgment motion. *See Conlon*, 474 F.3d at 624. However, courts may also consider the status of discovery, the timing of the late responses, and the knowledge of the parties when determining whether prejudice would result. *See, e.g.*, *id.* at 624–25 (affirming finding of prejudice where party relying on admissions had "relied on the admissions for a total of two and a half months, through the discovery and dispositive motion cut-off dates, with no indication that [the party seeking withdrawal] intended to file a motion to withdraw" and the relying party had not conducted some discovery in reliance on the admissions); *Bergemann v. United States*, 820 F.2d 1117 (10th Cir. 1987) (no prejudice where requesting party knew, despite movant's failure to respond, that movant intended to contest a matter that was later deemed admitted); *Zimmerman v. Cambridge Credit Counseling Corp.*, 529 F.Supp.2d 254, 269 (D. Mass. 2008) ("The danger of prejudice resulting from the withdrawal of admissions is a special matter for concern where discovery has already run its course on the premise that the admissions are valid."), *aff'd sub nom.*

7

*Zimmerman v. Puccio*, 613 F.3d 60 (1st Cir. 2010); *In re Fisherman's Wharf Fillet, Inc.*, 83 F.Supp.2d 651, 661 (E.D. Va. 1999) ("With the passage of time and as each moment for response to a pleading slipped by [the movant's] burden for withdrawal of the deemed admissions is raised and the prejudice to the [relying party] is increased."); *Armstrong v. Exec. Office of the President*, 877 F.Supp. 690, 697 n.8 (D.D.C. 1995) ("to allow withdrawal of these admissions now would result in prejudice because discovery would have to be reopened"), *rev'd on other grounds*, 90 F.3d 553 (D.C. Cir. 1996); *Branch Banking & Trust Co. v. Deutz-Allis Corp.*, 120 F.R.D. 655, 659 (E.D.N.C. 1988) (finding prejudice where party relied on admissions during discovery and allowing amendment would result in new issues on which no discovery had been conducted).

### 3. Cause

While Rule 36 does not require the Court to consider the cause of the delay, it may do so. *See Nguyen v. CNA Corp.*, 44 F.3d 234 (4th Cir. 1995) (affirming district court's finding that responses filed one day late were timely, because delay was minimal and due to a snowstorm); *see also Gwynn*, 719 F.3d at 298 (citing *Conlon*, 474 F.3d at 625) ("Courts may consider other factors as well, such as whether the moving party can show good cause for the delay, but they are not required to do so.").

## B. Rule 16

Rule 16 of the Federal Rules of Civil Procedure provides that a scheduling order may only be modified "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see also* Fed. R. Bankr. P. 7016(a) ("Rule 16 FR Civ P applies in adversary proceedings."). "[T]he touchstone of 'good cause' under Rule 16(b) is diligence." *Marcum v. Zimmer*, 163 F.R.D. 250, 255 (S.D.W. Va. 1995). Carelessness and nondiligence are the "hallmarks of failure to meet the good cause standard." *W. Va. Hous. Dev. Fund v. Ocwen Tech. Xchange, Inc.*, 200 F.R.D. 564,

8

567 (S.D.W. Va. 2001). "If the [movant] was not diligent, the inquiry should end." *Marcum*, 163 F.R.D. at 254. The burden is on the moving party to demonstrate good cause. *See Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008).

### III.

Brodnik requests leave to amend his deemed admissions with late filed responses, and for the Court to briefly reopen discovery. The Court will first address Brodnik's contention that Post had an obligation to confer under Rule 37, before analyzing the motion under Rules 36 and 16.

**A. Applicability of Rule 37**

As an initial matter, the Court finds Brodnik's contention that Post had an obligation to inquire as to his failure to file responses or to meet and confer to be without any merit. Rule 36, by its very language, is a self-executing rule that does not require the sanctions of Rule 37 to operate. *See* Fed. R. Civ. P. 36 (deeming matters admitted when party fails to respond). When a party does not respond to requests for admissions within the set period, the relevant matters are deemed admitted. *See id.* Rule 37 – which requires parties to confer before the filing of a motion to compel discovery or disclosure – has no relation to the general operation of Rule 36. Rule 37 becomes applicable to Rule 36 when a responding party fails to admit a matter that is later proven to be true. *See* Fed. R. Civ. P. 37(c)(2).

The Court concludes, therefore, that this attempt by Brodnik to shift the blame for his dilatory filings is unavailing. Simply put, Post was not required to remind Brodnik of his Rule 36 obligations.

**B. Amendment of Responses to Requests for Admissions**

Neither prong of Rule 36(b)'s test for amendment or withdrawal of admissions is met in this case. First, Brodnik has failed to establish that denying his motion would prevent presentation of the merits of the case. Second, the Court is not persuaded that Post would not be prejudiced by grant of the motion.

As to the first prong, Brodnik has not presented a sufficient argument as to why denying his motion would prevent presentation of the merits of his case. Indeed, Post's motion for summary judgment is not predicated solely on deemed admissions. Rather, it is supported by evidence and specific citations to facts in the record. The deemed admissions are not core elements of Post's claims or impermissible admissions of purely legal matters. *See Perez*, 297 F.3d at 1266. Rather, the deemed admissions are factual matters supported by independent evidence. For example, the amount of Brodnik's indebtedness to Post is supported by an order from the Virginia state court setting the arrearage based on the evidence [Dckt. 12 at 3–4; Dckt. 12-7 at 1]. As such, the deemed admissions do not take the "wind out of [Brodnik's] sails" and cut the case off at summary judgment. *Perez*, 297 F.3d at 1266.

And, as a practical matter, Brodnik simply has no admissible evidence for presentation on the merits. Brodnik has wholly failed to participate in discovery, including Rule 26(a) disclosures. Initial Rule 26(a) disclosures were due on January 29, 2019, well before any alleged confusion over the status of the case [Dckt. 6]. Under Rule 26, a party is required to provide certain initial disclosures, the purpose of which "is to allow the parties to adequately prepare their cases for trial and to avoid unfair surprise." *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014); *see also* Fed. R. Civ. P. 26(a); Fed. R. Bankr. P. 7026 ("Rule 26

F.R.Civ.P. applies in adversary proceedings."). If a party fails to make the disclosures required by Rule 26(a), the sanction is exclusion: "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1); *see also* Fed. R. Bankr. P. 7037 ("Rule 37 F.R.Civ.P. applies in adversary proceedings.").

As to the second prong, the Court is not persuaded that Post would not be prejudiced by the grant of Brodnik's motion. Unlike in cases where courts have granted such motions, it is undisputed that the delay in filing here was not minor. This is not a case where a filing was made one day or even one month late and allowing the deemed admissions to stand would essentially strike a matter on a technicality. *See, e.g.*, *Nguyen*, 44 F.3d at 242 (affirming treatment of late responses as timely where responses were one day late and due to a snowstorm); *Perez*, 297 F.3d at 1268 (no prejudice where the motion to withdraw was made only six days after the deadline passed); *Raiser*, 409 F.3d at 1247 (no prejudice where "[o]nly two weeks passed between the due date . . . and the date [movant] filed his initial motion to amend his admissions" during which the nonmovant was just preparing a motion for summary judgment). Brodnik did not file his responses until over *130 days* after the due date and well past the June 5, 2019 discovery deadline. *See Conlon*, 474 F.3d at 624 (affirming finding of prejudice where "the government relied on the admissions for a total of two and a half months, through the discovery and dispositive motion cut-off dates, with no indication that Conlon intended to file a motion to withdraw admissions.").

Under these circumstances, it is difficult to conclude that Post would not be prejudiced by the withdrawal or amendment of the admissions. Given the proximity to the trial date – currently set for November 15, 2019 [Dckt. 20] – the extensive delay in filing, the passage of the discovery and dispositive motion deadlines, and the filing of a motion for summary

11

judgment, the Court concludes that prejudice would result to Post if Brodnik's request were granted.

**C. Reopening of Discovery**

Finally, as to Brodnik's request to reopen discovery, this Court must deny the request because Brodnik cannot show good cause. The relief Brodnik seeks requires more than simply declaring discovery reopened. Rather, because Brodnik's responses are untimely under Rule 36 *and* the Court's scheduling order, the relief sought necessarily requires amendment of the scheduling order. Accordingly, Brodnik must also establish good cause within the meaning of Rule 16. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *see also* Fed. R. Bankr. P. 7016(a) ("F.R.Civ.P. 16 applies in adversary proceedings").

Brodnik's failure to participate in discovery in any meaningful way within the deadline is solely due to his lack of diligence. Specifically, Brodnik believed – without any indication from the Court or legal authority – that the instant adversary proceeding was stayed, despite instant proceeding having no relation to the state court litigation. With diligence, Brodnik could have discovered that this was not the case by checking the docket to determine whether an order was entered staying the adversary proceeding. Because Brodnik "was not diligent, the inquiry should end." *Marcum*, 163 F.R.D. at 254. Thus, the Court will not reopen discovery.

**IV.**

Because Brodnik has failed to meet his burden under Rule 36 or Rule 16, the Court concludes that Brodnik is not entitled to amend his admissions. Accordingly, the Court **DENIES** Defendant Randy Michael Brodnik's Motion to Amend Discovery Responses [Dckt. 15].